# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DIRECT DEVELOPMENT, INC., et al.,**
        Plaintiffs,

   v.

                                 Case No. 09-C-1065

**AT WORLD PROPERTIES, LLC, et al.,**
        Defendants.

---

## DECISION AND ORDER

Plaintiff Direct Development, Inc. (and certain affiliated entities) filed suit in Brown County Circuit Court against defendant At World Properties, LLC ("@properties"), Richard DiVito, Colin Hebson, and Michael Golden. Defendants @properties and Michael Golden removed the action to this court. Plaintiffs allege that defendants breached a contract to sell condominium units that plaintiffs built in Kenosha, Wisconsin and committed other offenses. I have subject matter jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000.[1] Before me now are @properties and Golden's

---

[1] In prior orders, I noted several deficiencies in the parties' jurisdictional allegations. The parties have since amended their jurisdictional allegations, and as amended I am satisfied that the allegations show that the parties are diverse. However, many of the allegations appear to be based on information and belief rather than personal knowledge. So although the parties' allegations are enough to show that jurisdiction exists at the pleading stage, the parties must be prepared to offer evidence in support of these allegations at later stages of the case. See Alliant Energy Corp. v. Bie, 277 F.3d 916, 919-20 (7th Cir. 2002) (stating that although general jurisdictional allegations suffice to show that jurisdiction exists at pleading stage, parties must be prepared to offer more detailed factual evidence during successive stages of the litigation). I therefore advise the parties to conduct discovery relating to the jurisdictional facts so that at the summary judgment stage they can offer affidavits or depositions of witnesses who have personal knowledge of the jurisdictional facts. Cf. Summers v. Earth Island Inst., __ U.S. __, 129 S. Ct. 1142, 1152 (2009) (stating that in order to discharge independent obligation to confirm that jurisdiction exists, federal court must review affidavits to confirm accuracy of alleged

motion to dismiss the amended complaint and plaintiffs' motion to transfer this case to the Green Bay division of this court.

## I. BACKGROUND

Plaintiff Direct Development, Inc. ("Direct Development") is a Wisconsin corporation headquartered in Green Bay, Wisconsin. The other plaintiffs are limited liability companies affiliated with Direct Development. Defendant @properties is an Illinois limited liability company that provides real estate brokerage services. Defendant Michael Golden, an Illinois real estate broker, owns a 51% interest in @properties. Between August 2006 and December 2008, Golden held a Wisconsin broker's license in addition to his Illinois broker's license. Defendants Richard DiVito and Colin Hebson are Illinois real estate agents who performed real estate services under the @properties name during the time period relevant to plaintiffs' claims.

In 2005, plaintiffs were in the process of developing a condominium project in Kenosha, Wisconsin known as Harbor Place. Plaintiffs intended to market the condominiums to Chicago residents. In September 2005, plaintiffs engaged @properties to assist with the marketing and sale of individual units. On September 27, 2005, Direct Development signed a "Sales and Marketing Agreement" for Harbor Place that purported to be signed by Michael Golden on behalf of @properties. However, Golden contends that the signature that appears on the signature line for @properties is not his. In any event, the contract specified that @properties was the exclusive sales and marketing agent for the Harbor Place project. Most of the sales and marketing for Harbor Place was performed

---

jurisdictional facts, even if no one denies that such facts are true).

by defendants DiVito and Hebson, real estate agents (i.e., salespersons) who worked under the authority of Golden's broker's license. DiVito and Hebson held themselves out as agents working under the @properties name and included the @properties logo on marketing materials prepared for Harbor Place. Further, @properties maintained a sales office on the Harbor Place site in Kenosha. Golden contends that although he was aware that DiVito and Hebson were marketing property in Kenosha, he was not himself involved in the Harbor Place project. Golden describes DiVito and Hebson as independent contractors rather than employees of @properties.

At the time plaintiffs engaged @properties, construction of Harbor Place had not yet commenced. Before plaintiffs' bank would agree to finance construction of the development, plaintiffs had to pre-sell eleven Harbor Place units to purchasers willing to pay 5% of the purchase price in earnest money. Plaintiffs allege that they communicated this fact to @properties, and that Richard DiVito agreed to collect the 5% earnest money from purchasers and hold the payments in an @properties escrow account.

During 2006, @properties sent Direct Development eleven signed purchase agreements for Harbor Place units indicating that each purchaser had paid 5% in earnest money, and that such earnest money was being held in @properties's escrow account. After Direct Development showed these agreements to its bank, the bank agreed to loan plaintiffs $10 million for the construction of Harbor Place. In August 2007, however, Direct Development learned that @properties had not, in fact, collected earnest money from any purchaser and that it held no earnest-money payments in its escrow account. Further, Direct Development alleges that some of the eleven purchase agreements were forged.

3

One agreement, for example, states that "Mike Golden" agreed to purchase one of the units, yet Golden denies having agreed to purchase a unit.

Although construction of Harbor Place was eventually completed, the project was a complete failure. At present, none of the units are occupied. Plaintiffs allege that they never would have borrowed money to begin construction of Harbor Place had defendants not lied about collecting earnest money and not submitted forged purchase agreements indicating that eleven units had been presold.

Plaintiffs allege numerous causes of action against defendants. First, plaintiffs allege that defendants breached the Sales and Marketing Agreement. Second, plaintiffs allege that defendants engaged in various forms of fraud, including violations of the Wisconsin Organized Crime Control Act ("WOCCA") and Wisconsin Statute Section 100.18, by forging purchase agreements and misrepresenting that earnest money had been collected from purchasers. Third, plaintiffs allege that defendants' conduct amounts to a breach of the fiduciary duties they owed to plaintiffs as plaintiffs' real estate agents and broker. Finally, plaintiffs allege that defendants were negligent in the performance of their duties and that Golden and @properties were negligent in their supervision of Hebson and DiVito.

Golden and @properties have moved to dismiss the amended complaint insofar as it pertains to them for lack of personal jurisdiction. In the alternative, they move to dismiss the amended complaint for failure to state a claim on which relief may be granted, arguing that plaintiffs have not adequately pleaded their claims. Also before me is plaintiffs' motion to transfer this case to the Green Bay Division of this court on the ground that the case has the greatest nexus with counties encompassed by the Green Bay Division.

4

## II. DISCUSSION

**A.     Personal Jurisdiction**

Once a defendant moves to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. Purdue Research Found. v. Sanofi-Sythelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003). The precise nature of the plaintiff's burden depends on whether an evidentiary hearing has been held. If a hearing has been held, the plaintiff must establish facts showing that jurisdiction exists by the preponderance of the evidence. Id. If, however, the district court rules on the defendant's motion based on the submission of written materials, the plaintiff need only make out a prima facie case of personal jurisdiction. Id. In evaluating whether the plaintiff has made out a prima facie case, the court resolves all factual disputes in the plaintiff's favor. Id. In the present case, the parties have not requested an evidentiary hearing and have instead relied exclusively on affidavits, depositions and other written materials. Therefore, plaintiffs' burden is to establish a prima facie case of personal jurisdiction.

A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have personal jurisdiction. Id. at 779. To determine whether the state court would have jurisdiction, I must first determine whether a state statute authorizes the exercise of personal jurisdiction over the defendant. If so, I proceed to the second phase of the inquiry, in which I ask whether exercising jurisdiction over the defendant comports with the requirements of federal due process. Hyatt Int'l Corp. v. Coco., 302 F.3d 707, 713 (7th Cir. 2002).

5

In the present case, plaintiffs argue that a provision of Wisconsin's real estate code, Wisconsin Statute § 452.11(3), provides the statutory basis for personal jurisdiction over @properties and Golden.[2] This provision requires nonresident real estate brokers to file with the Wisconsin Department of Regulation and Licensing "an irrevocable consent that actions may be commenced [against the broker] in the proper court of any county of the state in which a cause of action arises or in which the plaintiff resides, by the service of any process or pleading . . . on the department." Wis. Stat. § 452.11(3). This provision further states that "[t]he consent shall stipulate and agree that such service is valid and binding as due service upon [the broker] in all courts in this state." Id.

On August 14, 2006, Golden, on behalf of himself and @properties, applied for a Wisconsin real estate broker's license pursuant to Chapter 452 of the Wisconsin Statutes. His request for a license was approved on August 22, 2006. As part of his application, he signed the irrevocable consent required by Section 452.11(3). This consent provided in relevant part as follows:

> The applicant or business representative herein, does hereby consent irrevocably that suits and actions may be commenced against the applicant in the proper court of any county in the State of Wisconsin in which a cause of action may arise or in which the plaintiff resides, by the service of process or pleading authorized by the laws of the State of Wisconsin on the Wisconsin Department of Regulation and Licensing or any duly authorized employee thereof, and does hereby stipulate and agree that such service of such process or pleading shall be taken and held in all courts to be valid and binding as if due services had been made upon said applicant in the State of Wisconsin.

---

[2]Plaintiffs also argue that jurisdiction is proper under Wisconsin's long-arm statute, Wis. Stat. § 801.05, but I do not address this argument.

(Golden Dep., Ex. 8, twelfth page.) Plaintiffs argue that by singing this consent, Golden and @properties have consented to personal jurisdiction in Wisconsin.

Golden and @properties do not dispute that Section 452.11(3) and the irrevocable consent provide a statutory basis for personal jurisdiction over a broker in actions involving "brokerage services," as that term is defined in Chapter 452. (Reply Br. [Docket #60] at 5.) However, they argue that the consent does not create personal jurisdiction over them for purposes of the present action because plaintiffs' claims do not involve "brokerage services." I reject this argument for two reasons. First, nothing in either Section 452.11(3) or the consent limits a broker's consent to personal jurisdiction in Wisconsin to actions involving brokerage services. Both the statute and the consent provide that the broker's consent applies to "actions," without limitation.[3] Second, even if a broker's consent to personal jurisdiction were limited to actions involving brokerage services, the present action would qualify as an action involving brokerage services. Under Chapter 452, "brokerage service" means a service provided by a "broker." Wis. Stat. § 452.01(3e). Services provided by a "broker" include showing and promoting real estate, as well as negotiating the sale of real estate. Id. § 452.01(2). In the present case, plaintiffs engaged @properties for the purpose of performing these types of services in connection with Harbor Place – specifically, marketing and selling Harbor Place units to potential purchasers – and, resolving all factual disputes in plaintiffs' favor, these services were performed by DiVito and Hebson under @properties' name and Golden's broker's license. Plaintiffs allege that in the course of providing these marketing and sales services, DiVito

---

[3] Golden and @properties have not cited, and I have not found, a case interpreting the scope of an irrevocable consent signed pursuant to Wis. Stat. § 452.11(3).

7

and Hebson forged purchase agreements and lied about collecting earnest-money payments from purchasers. Based on these allegations, I find that plaintiffs' claims arise out of defendants' provision of brokerage services in Wisconsin.[4]

Golden and @properties contend that Hebson and DiVito are independent contractors of @properties rather than employees, and that therefore personal jurisdiction over @properties and Golden cannot be predicated on the conduct of Hebson and DiVito, even if such conduct involved the provision of brokerage services under @properties's name. However, under Wisconsin law, "[e]ach broker shall supervise, and is responsible for, the brokerage services provided on behalf of the broker by any broker, salesperson, or time-share salesperson who is an employee of the broker." Wis. Stat. § 452.12(3). Further, Chapter 452 expressly defines "employee" to include salespersons engaged as independent contractors. Wis. Stat. § 452.12(4h). Thus, under Wisconsin law, acts and omissions by Hebson and DiVito committed in the course of providing brokerage services to plaintiffs on behalf of @properties are imputable to Golden and @properties. For this reason, Hebson and DiVito's actions in Wisconsin provide the basis for personal jurisdiction over both Golden and @properties.

---

[4]Although Golden and @properties attempt to characterize this case as one involving "bank fraud" rather than "brokerage services" (Reply Br. [Docket # 60] at 1), I find this characterization unpersuasive because even though this case involves the use of allegedly fraudulent documents to obtain financing for Harbor Place, those documents were allegedly created by defendants in the course of their provision of brokerage services to plaintiffs. Golden and @properties also attempt to draw a distinction between "brokerage services" and "marketing and selling services," and contend that DiVito and Hebson provided only the latter type of services to plaintiffs. (Reply Br. [Docket #60] at 3.) However, as explained in the text, Chapter 452 includes marketing and sales services within the definition of brokerage services, and thus defendants' proposed distinction is not tenable.

8

I next consider whether the exercise of personal jurisdiction over Golden and @properties comports with the requirements of federal due process. A defendant's consent to a state court's exercise of personal jurisdiction has always been considered a sufficient ground for the exercise of such jurisdiction consistently with due process. See, e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 & n.14 (1985); Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703-04 (1982); Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1290 (7th Cir. 1989). In light of the irrevocable consent filed by Golden on behalf of himself and @properties, I conclude that the exercise of personal jurisdiction over Golden and @properties comports with the requirements of federal due process.

**B.     Motion to Dismiss for Failure to State a Claim**

In addition to their motion to dismiss for lack of personal jurisdiction, Golden and @properties have moved to dismiss the amended complaint for failure to state a claim on which relief may be granted. See Fed. R. Civ. P. 12(b)(6). To state a claim on which relief may be granted, a complaint must allege "enough facts to render the claim not just conceivable, but facially plausible." Tully v. Barada, 599 F.3d 591, 593 (7th Cir. 2010) (citing Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) and Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). Further, accusations of fraud must be pleaded with particularity, Fed. R. Civ. P. 9(b), meaning that the plaintiff must specify the "who, what, when, where and how" of the alleged fraudulent act, Reger Dev., LLC v. Nat'l City Bank, 592 F.3d 759, 764 (7th Cir. 2010). In the present case, defendants argue that each claim in the amended complaint fails because plaintiffs have omitted necessary allegations. As

9

explained below, I find that plaintiffs have adequately pleaded most of their claims. However, because plaintiffs have not alleged enough facts to render their WOCCA claims plausible, I will dismiss those claims.

### 1. Breach of the Sales and Marketing Agreement

Defendants argue that the amended complaint fails to state a claim for breach of contract. However, the amended complaint alleges that defendants breached several provisions of the Sales and Marketing Agreement, including a provision requiring defendants to "[s]ubmit weekly written reports to [Direct Development] regarding the number of Units sold and the respective sales prices for such Units." (Sales & Marketing Agreement ¶ 3(h).) The amended complaint includes factual allegations showing that this claim is plausible on its face – namely, allegations that defendants submitted false and forged information to defendants regarding the number of units sold. Thus, plaintiffs have adequately pleaded their breach of contract claim.

Defendants argue that the breach of contract claim fails because plaintiffs have not pleaded that they performed their obligations under the contract or mitigated their damages. However, I am aware of no authority requiring plaintiffs to plead that they performed their own contractual obligations or that they have taken steps to mitigate their damages.[5] In any event, plaintiffs have pleaded that they performed all material contractual allegations and taken reasonable steps to mitigate their damages. (Am. Compl. ¶ 17.)

---

[5]The case cited by defendants, Moha v. Hudson Boxing Club, 164 Wis. 425 (1916), did not involve pleading requirements. Rather, the case held that a plaintiff who fails to prove at trial that he substantially performed his own contractual obligations cannot prevail on a breach of contract claim.

10

Finally, defendants argue that the breach of contract claim should be dismissed because none of the plaintiffs other than Direct Development were parties to the Sales and Marketing Agreement. However, Direct Development was itself a party, and therefore this claim survives even if the other plaintiffs were not parties. In any event, the amended complaint alleges that the other plaintiffs were third-party beneficiaries of the agreement (Am. Compl. ¶ 9), and I conclude that the complaint contains enough factual allegations to make this claim plausible on its face. Specifically, the complaint alleges that the other plaintiffs were the entities that actually developed Harbor Place and therefore were the primary beneficiaries of defendants' brokerage services. See Krawczyk v. Bank of Sun Prairie, 174 Wis. 2d 1, 7-8 (Ct. App. 1993) ("To gain status as third-party beneficiary of a contract, the party claiming that status must show that the contract was entered into by the parties directly and primarily for his or her benefit.").

### 2. Fraud Claims

Defendants move to dismiss plaintiffs' fraud claims on the ground that plaintiffs have not pleaded fraud with particularity as required by Federal Rule of Civil Procedure 9(b).[6] However, I find that plaintiffs have pleaded fraud with particularity. Plaintiffs allege that in August and September of 2006, DiVito and Hebson, on behalf of @properties, transmitted by U.S. Mail eleven purchase agreements for Harbor Place units indicating that @properties had collected earnest-money payments from the purchasers and was holding such payments in an @properties escrow account. Plaintiffs allege that one of these

---

[6] By "fraud claims," I mean all plaintiffs' claims premised on fraudulent conduct – i.e., their common law misrepresentation claims, claims under the Wisconsin Organized Crime Control Act, breach of fiduciary duty claims, and Section 100.18 claims.

11

agreements – specifically, the agreement signed by "Mike Golden" on August 14, 2006 – was forged. Plaintiffs further allege that, contrary to the representations made in the purchase agreements, DiVito and Hebson had not actually collected the earnest money payments and had transmitted the purchase agreements knowing that the representations made in such agreements were false. Finally, plaintiffs attach an exhibit to the amended complaint that identifies each purchase agreement containing the allegedly false representations, the identity of the purchaser, the date of the agreement, the amount of earnest money that defendants supposedly had collected, and the escrow account in which the earnest money was supposedly deposited. These allegations are sufficient to satisfy the requirement that fraud be pleaded with particularity. See U.S.ex rel. Lusby v. Rolls-Royce Corp., 570 F.3d 849, 855 (7th Cir. 2009) (stating that a complaint adequately pleads fraud when defendants have been told exactly what the alleged fraud entails).

Defendants also argue that the fraud claims should be dismissed because plaintiffs have not pleaded that they reasonably relied on the false information contained in the purchase agreements. However, plaintiffs allege that if DiVito and Hebson had not falsely represented that earnest money had been collected, plaintiffs would not have borrowed money to begin construction of Harbor Place. (Am. Compl. ¶ 31.) Thus, plaintiffs have adequately pleaded that they relied on the false statements.

### 3. Breach of Fiduciary Duty Claim

Defendants argue that plaintiffs' breach of fiduciary duty claim should be dismissed because it is barred by the statute of limitations. However, the statute of limitations is an affirmative defense that plaintiffs need not anticipate in their complaint. Therefore, this

12

claim will not be dismissed. Fed. R. Civ. P. 8(c)(1); Davis v. Ind. State Police, 541 F.3d 760, 763 (7th Cir. 2008) ("Complaints need not anticipate, and attempt to plead around, potential affirmative defenses.").

### 4. Wisconsin Organized Crime Control Act Claim

Defendants move to dismiss plaintiffs' claims under the Wisconsin Organized Crime Control Act ('WOCCA"), Wis. Stat. §§ 946.80 - 946.88, against @properties, DiVito and Hebson. Because WOCCA was patterned on its federal counterpart, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Wisconsin courts consider cases interpreting RICO to be persuasive authority as to the interpretation of WOCCA. See, e.g., State v. Mueller, 201 Wis. 2d 121, 144 (Ct. App. 1996). In the present case, plaintiffs do not specify the precise section of WOCCA that defendants have allegedly violated. However, I infer from the complaint that they allege a violation of Section 946.83(3), which provides that "[n]o person employed by, or associated with, any enterprise may conduct or participate, directly or indirectly, in the enterprise through a pattern of racketeering activity." (See Am. Compl. ¶ 55 (alleging that "[d]efendants have conducted and participated in Plaintiffs [sic] enterprise through a pattern of racketeering activity").) The corresponding provision of RICO is 18 U.S.C. § 1962(c).

In order to state a viable cause of action under Section 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Goren v. New Vision Int'l, Inc., 156 F.3d 721, 727 (7th Cir. 1998). The parties have not cited, and I have not found, any case in which a court has stated the requirements for pleading a claim under Section 946.83(3). However, the parties have not argued that the

13

pleading requirements under WOCCA are any different than the pleading requirements under RICO,[7] and given the similarity between Section 1962(c) and Section 946.83(3) and the Wisconsin courts' use of RICO cases as persuasive authority regarding the interpretation of WOCCA, I conclude that plaintiffs must allege the same four elements in order to state a viable claim under Section 943.83(3).

In the present case, defendants argue that plaintiffs have not adequately pleaded the "conduct" element of their WOCCA claim.[8] In order to satisfy this element, a plaintiff must allege that the defendant "participated in the operation or management of the enterprise itself," and that the defendant "played some part in directing the enterprise's affairs." Goren, 156 F.3d at 727 (quoting Reves v. Ernst & Young, 507 U.S. 170 (1993)). "[M]ere participation in the activities of the enterprise is insufficient . . . ." Id. Here, plaintiffs allege that the applicable "enterprises" are the plaintiffs themselves. (Am. Compl. ¶ 48.) Thus, to satisfy the conduct element, plaintiffs must allege facts that give rise to a plausible inference that defendants @properties, DiVito and Hebson participated in the operation or management of Direct Development and its affiliated entities.

I conclude that the amended complaint does not allege such facts. Although the amended complaint alleges in boilerplate fashion that defendants "conducted and participated in Plaintiffs [sic] enterprise" (Am. Compl. ¶ 55), it includes no facts that make

---

[7] Although plaintiffs point out that the RICO pleading requirements do not necessarily apply to their WOCCA claims (Pl.'s Br. in Opp. (Docket #45] at 34), they make no attempt to show that Wisconsin courts would not follow federal authority and adopt the pleading requirements that apply to Section 1962(c).

[8] Defendants also argue that plaintiffs have not adequately alleged a pattern of racketeering activity, but I do not address this argument.

14

this allegation plausible. As far as the amended complaint reveals, defendants @properties, DiVito and Hebson did no more than act as real estate agents and/or brokers for plaintiffs. The amended complaint contains no allegations suggesting that defendants had any control over plaintiffs whatsoever, or that they played any part in directing plaintiffs' affairs. The amended complaint does not suggest, for example, that defendants directed plaintiffs to obtain financing for Harbor Place. Rather, the complaint alleges that defendants merely provided plaintiffs with (allegedly false) information, which plaintiffs then used to make their own decisions as to whether they would borrow money to finance Harbor Place. Thus, at best, the amended complaint alleges that defendants participated in plaintiffs' business activities by acting as plaintiffs' real estate agents and brokers. Because this is insufficient to satisfy the conduct element under RICO (and, therefore, WOCCA), Goren, 156 F.3d at 727, plaintiffs' WOCCA claims will be dismissed.

### 5. Section 100.18 Claim

Defendants next move to dismiss plaintiffs' claims under Wisconsin Statute § 100.18 on the ground that it is barred by the statute of limitations. Again, however, plaintiffs need not anticipate and attempt to plead around affirmative defenses, and therefore this claim will not be dismissed.

### 6. Negligence Claims Against Golden and @properties

Finally, defendants allege that plaintiffs have failed to state viable negligence claims against Golden and @properties on the ground that plaintiffs have not alleged that Golden or @properties owed plaintiffs a duty "pertaining to obtaining financing for the construction of Harbor Place." (Defs.' Br. in Supp. [Docket #41] at 28.) However, plaintiffs' negligence

15

claims are not based on any purported duty to assist plaintiffs in obtaining financing but on the duties @properties and Golden owed to plaintiffs under Chapter 452, such as the duty to supervise Hebson and DiVito. See Wis. Stat. §§ 452.12(3) & 452.133. I find that plaintiffs have adequately pleaded these claims.

**C.     Motion to Transfer to Green Bay Division**

Plaintiffs object to defendants' decision to remove this case to the Milwaukee Division of this district rather than the Green Bay Division and have requested that I transfer this case to the Green Bay Division. Pursuant to this district's general order regarding the assignment of cases among its Milwaukee and Green Bay divisions, civil cases having the "greatest nexus" with the counties encompassed by the Green Bay Division are assigned to the Green Bay Division. In re General Order Regarding Assignment of Cases to the United States District Judge Designated to Hold Court in Green Bay, Wisconsin (2005), available at http://www.wied.uscourts.gov (filed under "Court Information" and then "Court Orders") (last visited May 20, 2010). When a party files a case, that party must identify the division with which the case has the greatest nexus. The clerk will then assign the case to the designated division. A party that disagrees with the filer's designation may object to that designation or move to transfer the case based on the convenience of the parties and witnesses, or the interests of justice.

Plaintiffs contend that this case has the greatest nexus with the counties located in the Green Bay Division and that therefore defendants should have designated the Green Bay Division when they removed the case. Defendants contend that the case has the greatest nexus with the Milwaukee Division, and that even if does not, the case should

16

nonetheless proceed in the Milwaukee Division because that division is more convenient for the parties and the witnesses.

I find that this case has the greatest nexus with the Milwaukee Division. Although plaintiffs' principal place of business is located in Green Bay and this suit arises out of business operations that plaintiffs conducted out of their Green Bay offices, the central focus of the suit is the Harbor Place development in Kenosha, which is part of the Milwaukee Division. DiVito and Hebson, on behalf of @properties, marketed Harbor Place units out of a sales office located on the Harbor Place property in Kenosha. Further, representatives of the plaintiffs met with DiVito and Hebson at this office at least six times. (Hopfensperger Decl. [Docket #29] ¶¶ 8-9.) I find that these contacts with the Milwaukee Division are more significant than the parties' contacts with the Green Bay Division, and therefore plaintiffs' motion to transfer this case to the Green Bay Division will be denied.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that @properties and Golden's motion to dismiss for lack of personal jurisdiction is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss the amended complaint is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that plaintiffs' WOCCA claims are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that plaintiffs' motion to transfer this case to the Green Bay Division is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiffs' motions for leave to file a brief in excess of the page limitation [Docket ##27 & 46] are **GRANTED**.

17

Case 2:09-cv-01065-LA   Filed 05/24/10   Page 17 of 18   Document 70

**FINALLY, IT IS ORDERED** that plaintiffs' motion for leave to file a surreply brief [Docket #66] and defendants' motion to for leave to file a reply to plaintiffs' objections to the Second Affidavit of Michael Golden [Docket #69] are **GRANTED**.

Dated at Milwaukee, Wisconsin, this 24 day of May, 2010.

/s_____
LYNN ADELMAN
District Judge